WILLIAM DEMING *vs.* INHABITANTS OF HOULTON.

*Coupons in hands of innocent holder for value—when held valid.*

By a special act of the legislature the town of Houlton was authorized to aid in the construction of the Houlton Branch Railroad, by issuing scrip with annual interest coupons. The town voted to raise thirty thousand dollars, payable in this manner as the work progressed: In an action to recover interest upon these coupons it was *held*, that it was a matter within the province of the selectmen and treasurer to ascertain and decide whether or not the party contracting to build the railroad had complied with all the conditions and pre-requisites to entitle them to the bonds and coupons; and that their action was conclusive as between the defendants and innocent holders of the bonds and coupons.

ON REPORT.

ASSUMPSIT, upon an account annexed, for money had and received, and special counts to recover $122.54, the amount of twenty interest coupons of six dollars each attached to bonds issued by the defendants under the legislation, votes and acts referred to in the opinion, with the interest upon them after maturity.

The general issue was pleaded, together with a brief statement that the Houlton Branch Railroad Company was never legally organized, for several reasons mentioned; that the contractors for its construction did not carry out their contract according to its terms, either as to the place where, or the time within which it was to be built; that the bonds were received from the town officers by one of the contractors in fraud of the town and by collusion between these persons; that the terms of the act of the legislature

and of the contract, intended to secure the town from loss, were never complied with; that only two selectmen signed the bonds; that the legislature had no power to authorize the giving of the money of the citizens of Houlton to persons residing in New Brunswick to build a road only partly in said town and partly in said foreign province.

The chief grievance of which the defendants complain, and which led to their refusal to pay these coupons, was the location and erection of the depot by the contractor who built the road; and is thus stated in the fourth item of the specifications of defence:

IV. "That said Osburn was duly and seasonably notified by the selectmen of said town who signed said contract in behalf of the town, that said railroad must be built, and the depot located at or near the business centre of the town and village, as required by his contract; and that if not so built, it would be of little or no value or benefit to the town, and that the town would not pay him a dollar, if not built according to his contract. That said Osburn replied in substance that he should not so build it, but should build it as he pleased, and should locate the depot nearly or quite three quarters of a mile from the business centre of said village and town, and he did so build it, and he declared that he would rather build said depot where he did build it even if he received no part of the sum voted by the town. All of which was well known to the persons who signed said bonds and coupons here offered in evidence by the plaintiff."

To give progress to the cause and settle the law, the presiding justice ruled *pro forma* that the defence set up in the defendants' brief statement is not open to them in this action; that the facts offered by defendants to be proved are inadmissible, and excluded them on the ground that it was a matter within the province of the selectmen and treasurer of the town of Houlton for the time being to ascertain and decide whether or not the party contracting to build the said railroad had complied with all the conditions and pre-requisites to entitle them to the bonds and coupons as stipulated

in the contract, and that their action in the matter was final and conclusive as between the defendants and innocent holders of the bonds and coupons.

Whereupon the action was taken from the jury to be submitted to the full court upon the report of the presiding justice, and it is agreed by the parties to this action that the full court may enter such judgment of nonsuit or default, or grant a new trial as in their opinion the principles of law and justice may require.

*D. D. Stewart* and *C. M. Herrin* for the defendants.

A town, like a county, having no inherent right of legislation, is strictly confined to the powers delegated to it in subscribing to aid public improvements. *Thompson* v. *Lee County*, 3 Wallace, 330; *Emery* v. *Mariaville*, 56 Maine, 315; *Starin* v. *Genoa*, 23 N. Y., 449; *People* v. *Smith*, 45 N. Y., 773, 781; 1 Dillon's Mun. Corps., § 106.

The acts required by the legislature to be done are conditions precedent to the issuing of the bonds; and without their performance the bonds are void. 23 N. Y., 450.

Everybody is chargeable with knowledge of the action required by public legislation. *Knox County* v. *Aspinwall*, 21 Howard, 543, 544.

These bonds upon their face expressly refer to the acts and vote by force of which they are issued and with which compliance must be had. These terms and conditions precedent were that the corporation should give bond to the town for the payment of principal and interest of this scrip as each fell due, depositing an equal amount of its own scrip with the town, and securing it by a mortgage of the road. These things were not done, as the defendants offered to prove; though, really, the plaintiff, to entitle him to recover, should have first proved that they were done. 23 N. Y., 440; *People* v. *Mead*, 24 N. Y., 125; 1 Dillon's Mun. Corps., § 423.

Certainly, the evidence offered was admissible in defence, even if the plaintiff was an innocent holder for value, because it affects

the power of the town to make the contract at all. *Marsh* v. *Fulton County*, 10 Wallace, 683.

The act required, as a condition precedent, the exercise of "the best judgment and discretion" of the town officers. The defence offered was that it was not had, but that they acted collusively and fraudulently. This was such a non-compliance as to avoid the bonds. *Powell* v. *Tuttle*, 3 Comst., 396 ; *Sherwood* v. *Reede*, 7 Hill, 431 ; *Olmstead* v. *Elder*, 1 Selden, 144 ; *Jackson* v. *Hampden*, 16 Maine, 184, and 20 Maine, 37 ; *Anderson* v. *Farnham*, 34 Maine, 161.

Proof of fraud in their inception should have been admitted, as it would have thrown upon the plaintiff the burden of showing that he was an innocent purchaser for value, before maturity—which we deny. *Smith* v. *Sac County*, 11 Wallace, 139 ; *Aldrich* v. *Warren*, 16 Maine, 465 ; *Perrin* v. *Noyes*, 39 Maine, 384 ; *Gallagher* v. *Black*, 44 Maine, 99.

R. S., c. 1, § 4, item third, authorizing a majority of a board of public officers to act, refers to their ordinary official duties under general legislation, and not to the execution of a particular trust under a special act.

The act authorized the issuing of bonds ; i. e., instruments under seal ; not of this scrip. *Knight* v. *Barber*, 16 M. & W., 66. The plaintiff should have shown, affirmatively, that the road was built, as nearly as practicable and advisable, according to Hartley's survey, and not to the advice of Mr. Molyneux.

The declaration avers, in so many words, that these coupons fell due upon the twentieth day of July, 1872, and that the plaintiff became the lawful bearer of them on the twelfth day of the succeeding August ; that is, he bought them a month after maturity.

*F. A. Pike* and *J. & G. F. Granger* for the plaintiff.

This court was persuaded by counsel now arguing the reverse' that under authority to issue bonds a municipality could issue scrip; and so decided in *Augusta Bank* v. *Augusta*, 49 Maine, 507.

The allegation as to the time that the plaintiff became the holder of this scrip is alleged under a *videlicet* ; and it was admitted that

they were sold to him; and, virtually, that he was an innocent purchaser; so no equities could be set up against him. *Moran* v. *Miami County*, 2 Black, 722; *Zabriskie* v. *Cleaveland Railroad Company*, 23 Howard, 400, and very many other more recent cases decided by the same court.

The only condition precedent to the issue of the scrip was the acceptance of the act by the railroad company, and by the town of Houlton, of which no question is made. All the rest were conditions subsequent. The very issuing of the instrument is evidence of the existence of the circumstances justifying it, as is the case with all negotiable paper. *Lexington* v. *Butler*, 14 Wallace, 282, citing earlier cases determined in the same court. *Commercial Bank* v. *St. Croix Manufacturing Company*, 23 Maine, 280.

The action of the town of Houlton, subsequently ratified by the special act of 1869, c. 95, became the law of this contract. The scrip issued under it matured, payment was demanded and refused, and that sustains this action. *Augusta Bank* v. *Augusta*, 49 Maine, 507; *Railroad Company* v. *County of Otoe*, 16 Wallace, 667.

Counsel also cited in support of this action many other cases the tendency of which is apparent from the opinion in this case.

APPLETON, C. J. By an act approved February 6, 1867, c. 216, the Houlton Branch Railroad Company was incorporated with authority to built a railroad "from some point in the town of Houlton to some point on the east line of the state."

By an act approved February 18, 1867, c. 287, the town of Houlton was authorized to aid in the construction of the Houlton Branch Railroad. By § 1 the town was empowered to loan its credit to said company to the extent of fifty thousand dollars, if sanctioned by a two-thirds vote of the legal voters at a public town meeting called within a limited time and specifying the objects of such meeting.

By § 2 it is provided that, "upon the acceptance of this act as aforesaid, the selectmen of the town shall certify the same to the town treasurer, and he shall issue to the directors of said company

to be expended in the construction and furnishing of said road, and the purchase of the right of way, the scrip of said town, payable to the holder thereof, at the expiration of twenty years from date, with coupons for interest attached, payable annually, to the amount of ten thousand dollars, in sums of one hundred dollars each, said scrip to be countersigned by the selectmen before issue. And as the road shall progress towards completion, and in accordance with the judgment of the selectmen of said town, for the time being, the town treasurer may make further issue of said town scrip, countersigned by the selectmen, to the directors of said company, in suitable and convenient forms to the amount the town shall have decided to loan, payable in like manner as the first amount of issue."

By subsequent sections, provision is made for security to be given the town for the scrip issued, and its eventual repayment by the railroad company. It is made the duty of the municipal officers to see that proper indemnity against loss is given simultaneously with the issue of the scrip.

At a town meeting duly called on the twenty-third day of November, 1868, it was voted unanimously to accept the act approved February 18, 1867, entitled "an act to authorize the town of Houlton to aid the construction of the Houlton Branch Railroad, and that the town loan its credit to the amount of thirty thousand dollars in aid of the Houlton Branch Railroad; ten thousand dollars to be paid when the road is one-third built; ten thousand dollars when the road is two-thirds built; and ten thousand dollars when the road is completed, equipped and in running order."

It was further voted unanimously, "to authorize the directors of said Houlton Branch Railroad Company and the selectmen of the town, to contract with some party or parties, company or compa nies, for the construction, equipment and running of said road, at a cost to the town not to exceed thirty thousand dollars; and to transfer and assign the charter of said company, and to lease said road and all interest of the town and of the company therein, to such party or parties, company or companies, in such way and

Deming v. Houlton.

manner and for such time as to insure the construction, equipment and continuous running of said road."

By an act approved February 17, 1869, the doings of the town at the meeting of the twenty-third of November, 1868, were made valid, and it was authorized to loan its credit to the extent of thirty thousand dollars, and to make the contracts referred to in the votes of the town.

In pursuance of the authority thus conferred, the directors of the railroad company and the selectmen of Houlton entered into a contract on the thirtieth day of September, 1869, with Henry Osburn and William Todd "to construct the Houlton Branch Railroad in accordance with the survey of James R. Hartley, late of Woodstock, deceased, as nearly as practicable and advisable, to be commenced forthwith, and to be completed and equipped in running order, with proper and necessary and sufficient rolling stock on or before the first day of January, A. D., 1871."

Bonds were issued for $10,000 as the first instalment under the contract, and the coupons in suit were originally attached to the bonds so issued.

It is admitted that the railroad has been constructed in accordance with the advice and opinion of Charles Molyneux, a competent civil engineer ; that the necessary rolling stock has been provided ; and that the railroad has since been running in connection with the New Brunswick and Canada Railway, and furnishes direct communication with the European and North American Railroad and the St. Stephen and Woodstock Branch Railroads.

The case finds the bonds were sold to the plaintiff. The fact of a sale implies a consideration, and in the absence of proof of fraud or deception, an adequate one. There is no denial in the specifications of defence that the plaintiff is a *bona fide* holder before the maturity of the coupons, and for a valuable consideration. In the ordinary course of business the holder of a note or bill is presumed *prima facie* to be a holder for value. "The owner of a bill," remarks Lord Denman, in *Arbouin* v. *Anderson*, 1 Ad. & Ellis., New Rep., 498, "is entitled to recover upon it, if he came by it

honestly. That fact is implied *prima facie*, by possession ; and, to meet the inference so raised, fraud, felony, or some such matter must be proved."

As was remarked by Clifford, J., in *City of Lexington* v. *Butler*, 14 Wallace, 295 : "Issued by authority of law, as the bonds purport to have been, and being by the regular indorsement thereof made payable to bearer, they lawfully circulated from holder to holder by delivery, and the plaintiff having purchased four of the number in the market overt, became the lawful indorsee and holder of the same, together with the coupons annexed, and the interest secured by the coupons being unpaid, he instituted the present suit to recover the amount. Evidently the *prima facie* presumption in such a case is that the holder acquired the bonds before they were due ; that he paid a valuable consideration for the same ; and that he took them without notice of any defect which would render the instruments invalid."

The presiding judge ruled *pro forma* "that the defence set up in the defendants' brief statement is not open to them, in this action ; that the facts offered to be proved are inadmissible, and excluded them upon the ground that, it was a matter within the province of the selectmen and treasurer of the town of Houlton, for the time being, to ascertain and decide whether or not the party contracting to build the railroad had complied with all the conditions and pre-requisites to entitle them to the bonds and coupons as stipulated in the contract ; and that their action in this matter is final and conclusive as between the defendants and innocent holders of the bonds and coupons."

It is apparent that the case comes before us upon the question whether the various matters offered in the specifications of defence would be available against *bona fide* or innocent holders of coupons ; that the plaintiff is to be regarded as such, and that the justice presiding must have understood that this was the question to be submitted.for our determination.

The possession of coupons is *prima facie* evidence that the holder of them is the holder of the bonds from which they were

cut off. *McCoy* v. *Washington County*, 3 Wall., Jr., C. C., 381. It is not necessary to produce the bonds from which they are detached to entitle the holder to maintain an action upon them. *Aurora City* v. *West*, 7 Wallace, 82.

The bonds were issued by the proper authorities of the town. It was their duty to determine whether the preliminaries necessary to give validity to the bonds had been complied with, before issuing them ; and their determination is conclusive. *Augusta Bank* v. *Augusta*, 49 Maine, 507. The same principle has been fully affirmed by the supreme court of the United States. *Lynde* v. *The County*, 16 Wallace, 6. In a suit against a town by a *bona fide* holder of its bonds whose title accrued before maturity, the corporation cannot show, by way of defence, where the corporation has authority to issue such bonds, any want of compliance with formalities required by the statute authorizing their issue, or that there has been fraud in their agents issuing them. *Woods* v. *Lawrence County*, 1 Black, 386; *Mercer County* v. *Hackett*, 1 Wallace, 83 ; *Gelpcke* v. *Dubuque*, Id., 175 ; *Grand Chute* v. *Winegar*, 15 Wallace, 356.

The bonds were signed by but two of the selectmen. This is sufficient. By R. S., c. 1, § 4, item 3, it is enacted that "words giving authority to three or more persons authorize a majority to act, when the enactment does not otherwise determine." The enactments under which the coupons were issued do not "otherwise determine."

The limits of the Houlton Branch Railroad are within this state by the express language of its charter. The question as to the right of the legislature to authorize the raising of money, or of loaning credit to aid in the building of a railroad on foreign soil, does not arise.

The bonds given to meet the first instalment may be valid, though the subsequent ones were improvidently issued. By the terms of the vote of the town, which received the sanction of the legislature, they were to be issued before the completion of the contract. The risk of its ultimate completion was upon the par-

ty so issuing them, not the innocent purchaser. Besides, if once rightly issued and binding, they cannot be defeated in the hands of honest holders by the subsequent neglect of the officers of the town in enforcing the contract for the construction of the road, or of the contractors in negligently completing their contract.

Besides, by c. 286, § 2, the selectmen were specially authorized, as the road should progress, to issue scrip in accordance with their judgment. Nothing is shown or offered to be shown that these bonds and coupons were improperly issued. If issued in accordance with their judgment, in the absence of fraud, they are binding upon the town; and in case of fraud, the loss must fall on the town rather than on a *bona fide* holder, ignorant of such fraud.

The specifications of defence cannot apply to the bonds issued to meet the first instalment. There is no allegation that these were issued in fraud of the town. The most that is said is that the defendants shall so contend.

By the terms of the contract under which the railroad was built, it was to be constructed in accordance with the survey of James R. Hartley, "as nearly as practicable and advisable." There is no offer to show it was not so done. Besides, we must assume that the selectmen and treasurer so regarded it—else they would not have issued these bonds. *Defendants defaulted.*

CUTTING, WALTON, BARROWS, DANFORTH and PETERS, JJ., concurred.